IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ELIZABETH G. DUNCAN,              )
                                  )
                Plaintiff,        )
                                  )    CIVIL ACTION
v.                                )
                                  )    No. 08-2144-JWL-DWB
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of Social Security,  )
                                  )
                Defendant.        )
_____ )


## REPORT AND RECOMMENDATION

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act).  Finding error in the ALJ's evaluation of the medical opinions, the court recommends the decision be REVERSED and the case be REMANDED in accordance with the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

## I.  Background

On Aug. 25, 2006, Administrative Law Judge (ALJ) George M. Bock issued his decision and summarized the history of this case:

     The claimant filed applications for a Period of
Disability, Disability Insurance Benefits and
Supplemental Security Income Benefits under Titles II
and XVI of the Social Security Act ("Act") on May 20,
2003.  She alleged an onset date of disability of April
1, 2001.  The claims were denied initially and on
reconsideration by the State agency.  After the
claimant filed a timely request for hearing on February
19, 2004, a hearing was held and a partially favorable
decision was issued on July 29, 2005 by Administrative
Law Judge Edward G. Hoban of Manchester, New Hampshire.
(Exhibit 3A)  The claimant requested a review of the
decision by the Appeals Council disagreeing with her
onset date of disability.  (Exhibit 11B)  The Appeals
Council remanded the case to the hearing level for a
new hearing to obtain more evidence.  (Exhibit 12B)

     A subsequent hearing was held on July 27, 2006, in
Kansas City, Kansas before the undersigned
Administrative Law Judge.  The claimant appeared in
person and testified at the hearing.  She is
represented by Cara Rerrell, Attorney at Law.  Richard
Watts, M.D., testified at the hearing as a qualified
medical expert and Barbara Meyers testified as a
qualified vocational expert.  (Exhibit 16B)  In
addition, the claimant's husband, Robert Connley,
testified on behalf of the claimant.

(R. 23).

    ALJ Bock found that plaintiff was disabled within the

meaning of the Act and the regulations beginning Aug. 1, 2003,

but not before.  (R. 23-30).  Because he found plaintiff insured

for DIB only through Dec. 31, 2002, the ALJ determined that

plaintiff is eligible for SSI pursuant to Title XVI but not DIB

under Title II of the Act.  (R. 24).

    The ALJ found that plaintiff has not engaged in substantial

gainful activity since her alleged onset date of Apr. 1, 2001.

(R. 24).  He discussed the medical evidence and medical opinions

and gave "great weight to the opinions of claimant's treating

psychiatrist, Dr. Pulcher,"[1] but "little weight" to the opinion

of Dr. Block, a physician who began treating plaintiff on Jan.

28, 2004.  (R. 25).  He gave no weight to the opinion of Dr.

Benton because the record contains no progress notes to support

the bare opinion expressed by Dr. Benton.  Id.  He gave "little

weight" to the opinions of the state agency physicians and

psychologists.  (R. 26).

     The ALJ found that plaintiff has "severe" impairments

consisting of fibromyalgia syndrome, degenerative disc disease

and degenerative joint disease of the spine, edema, asthma, and

depression.  Id.  He found that plaintiff's migraines and wrist

injury are not "severe," and her vision problems and thrush are

not medically determinable impairments in the circumstances.  Id.

He found that plaintiff's combination of impairments does not

meet or medically equal the severity of a Listed impairment.  Id.

     The ALJ found plaintiff's allegations of disabling symptoms

"only partially credible," but he found her husband's testimony

credible.  (R. 27).  He found that before Aug. 1, 2003, plaintiff

had the residual functional capacity (RFC) for a range of

sedentary work augmented by the ability to lift and carry twenty

---

     [1]In summarizing Dr. Pulcher's report, the ALJ identified Dr.
Pulcher as Dr. Pulch**a**r.  (R. 25).  Plaintiff did the same
throughout her brief.  (Pl. Br. 10).  However, the record reveals
the correct spelling of the psychologist's name is Dr. "Pulcher"
(R. 227, 229), and the court will use that spelling.

pounds occasionally and ten pounds frequently, but limited by the
need for a sit/stand option, the ability to stand and/or walk
only fifteen to twenty minutes at a time, the ability to climb
stairs, bend, stoop, kneel, crouch, and crawl only occasionally,
and an inability to climb ladders, ropes, or scaffolds, be around
extreme heat or cold, or be exposed to airborne irritants.  (R.
27).  He found that on and after Aug. 1, 2003, plaintiff has
additional restrictions producing moderate limitations in her
mental abilities:  to understand, remember, and carry out
detailed instructions; to maintain attention and concentration
for extended periods; to perform activities within a schedule,
maintain regular attendance, and be punctual within customary
tolerances; to complete a normal workday and workweek without
interruptions from psychologically based symptoms and to perform
at a consistent pace without an unreasonable number and length of
rest periods; and to respond appropriately to changes in the work
setting.  Id.

The ALJ determined that before Aug. 1, 2003, plaintiff was
not disabled within the meaning of the Act because she was able
to perform her past relevant work as a medical transcriber.  (R.
27-28).  But, he determined that beginning Aug. 1, 2003 plaintiff
was unable to perform her past relevant work or any other work
which exists in significant numbers in the economy and was
therefore disabled within the meaning of the Act.  (R. 28).

-4-

Consequently, he denied plaintiff's applications for DIB and SSI before Aug. 1, 2003.  (R. 30).  He found plaintiff not entitled to DIB at any time because her insured status expired before Aug. 1, 2003.  (R. 30).  He found plaintiff disabled for purposes of SSI beginning Aug. 1, 2003, and informed her that the Social Security Administration would determine her eligibility for SSI payments pursuant to action by another office of the Social Security Administration.  Id.

Plaintiff once again disagreed with the onset date determination and sought, but was denied, Appeals Council review of the ALJ's decision.  (R. 12-14, 18).  Therefore, the ALJ's decision is the final decision of the Commissioner.  Id.; Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review of the decision.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance,

and it is such evidence as a reasonable mind might accept to support a conclusion.  Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); Frantz v. Astrue, 509 F.3d 1299, 1300 (10th Cir. 2007); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920 (2006); <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1142 (10th Cir. 2004); <u>Ray</u>, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  <u>Id.</u> at 750-51.  If plaintiff's impairments do not meet or equal the severity of a listing, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520, 416.920.  This assessment is used at both step four and step five of the sequential evaluation process.  <u>Id.</u>

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform her past relevant work, and whether she is able to perform other work in the economy.  <u>Williams</u>, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  <u>Dikeman v. Halter</u>, 245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751

n.2.  At step five, the burden shifts to the Commissioner to show

other jobs in the national economy within plaintiff's capacity.

Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ failed to properly develop the

record (Pl. Br. 7-8), failed to determine the onset date of

disability in accordance with Social Security Ruling (SSR) 83-20,

(Pl. Br. 8-9), and erred in weighing the medical opinions of Dr.

Pulcher and Dr. Stevens.  (Pl. Br. 10).  The Commissioner argues

that the ALJ properly developed the record, properly applied SSR

83-20, and properly evaluated the medical evidence, and that

substantial evidence supports the decision.  (Comm'r Br. 5-14).

The court begins with consideration whether the ALJ adequately

developed the record in this case.

**III. Duty to Develop the Record**

Citing Musgrave v. Sullivan, 966 F.2d 1371, 1376 (10th Cir.

1992), plaintiff argues that the key issue in determining whether

the ALJ adequately developed the record "is whether enough

questions were asked for the ALJ to ascertain the nature of

Plaintiff's alleged impairments, the treatment and medication she

received, and the impact of the alleged impairment on her daily

routine and activities."  (Pl. Br. 7).  Plaintiff then argues

that the ALJ failed to ask enough questions of plaintiff

regarding her condition in 2001 and 2002, failed to seek

additional evidence from treating or examining physicians

regarding plaintiff's condition in 2001 and 2002, and failed to ask the medical expert (ME) <u>any</u> questions regarding plaintiff's condition in 2001 and 2002.  Finally, she argues that the ALJ erred in questioning the ME although the ME had heard none of plaintiff's testimony regarding her condition.  (Pl. Br. 7-8). The Commissioner argues that the ALJ need not pursue every potential line of questioning, but must use reasonable good judgment to "fully and fairly develop the record as to material issues."  (Comm'r Br. 8)(quoting <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1168 (10th Cir. 1997)(citing <u>Glass v. Shalala</u>, 43 F.3d 1392, 1396 (10th Cir. 1994) and <u>Baca v. Dep't of Health & Human Servs.</u>, 5 F.3d 476, 479-80 (10th Cir. 1993)).

    "[A] Social Security disability hearing is a nonadversarial proceeding, in which the ALJ has a basic duty of inquiry, 'to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts.'"  <u>Musgrave</u>, 966 F.2d at 1374.  "This duty is not a panacea for claimants, however, which requires reversal in any matter where the ALJ fails to exhaust every potential line of questioning."  <u>Glass</u>, 43 F.3d at 1396.

    In the circumstances presented here, the court finds that "enough questions were asked for the ALJ to ascertain the nature of Plaintiff's alleged impairments, the treatment and medication she received, and the impact of the alleged impairment on her

daily routine and activities." (Pl. Br. 7).  With regard to
plaintiff's condition before 2003, the ALJ presiding at each
hearing sought and received plaintiff's testimony regarding when
she first quit working, why she quit working, what her condition
was at that time, and how it had progressed since then.  (R. 332-
39, 341-42, 369-72).  In each case, plaintiff's attorney followed
up with questions regarding plaintiff's condition when she worked
as a nanny, which was also before 2003.  (R. 344-45, 375-77).
Each ALJ received testimony from plaintiff's husband regarding
the progression of plaintiff's condition since 2001.  (R. 346-47,
382-88).

Further, where plaintiff is represented by counsel at the
ALJ hearing, the ALJ "should ordinarily be entitled to rely on
the claimant's counsel to structure and present claimant's case
in a way that the claimant's claims are adequately explored."
Hawkins, 1123 F.3d at 1167.  Plaintiff's counsel pursued further
examination of the witnesses at each ALJ hearing, and if he felt
the ALJ was not adequately seeking necessary facts, could have
asked the necessary questions to ensure the issues were properly
addressed.  The court finds no failure to properly develop the
record.

Despite plaintiff's protestations to the contrary, further
inquiry was not required of the ALJ.  Moreover, although
plaintiff claims the ALJ failed to ask enough questions and

failed to secure additional medical evidence, she points to no additional information which might have been revealed by more questioning and to no additional evidence regarding her condition in 2001 and 2002 which would have been available had the ALJ sought additional evidence from treating or examining physicians. In fact, plaintiff admits that "the medical records from that period of time are not as extensive or detailed as Plaintiff would like." (Pl. Br. 9). The ALJ did not err in his development of the record.

With regard to plaintiff's complaint that the ME did not hear plaintiff's testimony, plaintiff's argument misunderstands the regulations and the purpose of a ME. The regulations provide that an ALJ "may also ask for and consider opinions from medical experts on the nature and severity of [a claimant's] impairment(s) and on whether [claimant's] impairment(s) equals the requirements of any impairment listed." 20 C.F.R. §§ 404.1527(f)(2)(iii), 416.927(f)(2)(iii). And, an ME is a "nonexamining source" defined as, an "acceptable medical source who has not examined [the claimant] but provides a medical or other opinion." Id. at §§ 404.1502, 416.902. Thus, the purpose of having a ME is to seek the expert medical opinion of a source who has reviewed the medical record, and may provide medical advice to the ALJ. The regulations do not require the ME to hear the testimony of the claimant.

Plaintiff does not cite, and the court's research does not reveal, any authority for the proposition that a ME <u>must</u> hear the claimant's testimony.  The court's research revealed only six cases which even mention that an ME heard the claimant's testimony.  <u>Cotton v. Sullivan</u>, 2 F.3d 692, 694 (6th Cir. 1993)(observed and heard); <u>Mollo v. Barnhart</u>, 305 F. Supp. 2d 252, 259 (E.D.N.Y. 2004)(heard); <u>Preston, ex rel. K.B. v. Astrue</u>, No. 3:06-cv-1080-J-TEM, 2008 WL 876349 at *7 (M.D. Fla. Mar. 27, 2008)(observed and heard); <u>Braithwaite v. Barnhart</u>, No. 04 Civ. 2850(GBD)(DF), 2007 WL 5322447 at *5 (S.D.N.Y. Dec. 20, 2007)(heard); <u>Tolini v. Barnhart</u>, No. 05-230-P-S, 2006 WL 2827660 at *3 (D. Me. Sept. 29, 2006)(heard); <u>Burley v. Barnhart</u>, No. C.A. 04-4568, 2005 WL 2212363 at *3 (E.D. Pa. Sept. 9, 2005)(heard and evaluated).  In the cases cited, the fact that the ME heard the claimant's testimony was not necessary to the decision reached by the court.  Moreover, plaintiff does not show why hearing plaintiff's testimony was necessary to the ME's opinion in this case.  The court finds no error in the decision to take the testimony of the ME before plaintiff testified.

## IV.  Evaluation of Medical Opinions

Plaintiff claims the ALJ erred in failing to give substantial weight to the opinions of her treating physicians. (Pl. Br. 9).  Specifically, she argues, "The rule in the 10th Circuit has long been that the Commissioner must give substantial

-12-

weight to the evidence of a claimant's treating physician," that
Dr. Pulcher is a nontreating source and a psychologist not a
psychiatrist, and that the ALJ erroneously gave Dr. Pulcher's
opinion greater weight than the weight given the opinion of
plaintiff's treating physician, Dr. Stevens.  (Pl. Br. 10)(citing
<u>Frey v. Bowen</u>, 816 F.2d 508, 513 (10th Cir. 1987)(quoting <u>Turner</u>
<u>v. Heckler</u>, 754 F.2d 326, 329 (10th Cir. 1985))).  The
Commissioner argues that the record contains no medical opinion
from Dr. Stevens, that "Dr. Stevens treatment notes document
little more than Plaintiff's subjective complaints and her
medication regimen" (Comm'r Br. 12), and that the decision is
consistent with Dr. Steven's treatment records.  (Comm'r Br. 13).

     The law of the Tenth Circuit is not so favorable to
plaintiff as her brief suggests.  In the portion of the <u>Frey</u>
opinion cited by plaintiff, the court noted, "The well-
established rule in this circuit is that the Secretary must give
substantial weight to the testimony of a claimant's treating
physician, <u>unless good cause is shown to the contrary</u>."  <u>Frey</u>,
816 F.2d at 513(citing <u>Turner</u>, 754 F.2d at 329)(emphasis added).
More recently, the Tenth Circuit has clarified specifically how a
treating physician's opinion is to be weighed.  <u>Watkins v.</u>
<u>Barnhart</u>, 350 F.3d 1297, 1300-01 (10th Cir. 2003).

     Moreover, as the Commissioner argues, the record contains no
opinion of Dr. Stevens to which the ALJ might have accorded

-13-

substantial weight and which was not accord that weight.
"Medical opinions are statements from physicians and
psychologists or other acceptable medical sources that reflect
judgments about the nature and severity of [a claimant's]
impairment(s) including [claimant's] symptoms, diagnosis and
prognosis."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

The ALJ noted that Dr. Stevens treated plaintiff for
breathing problems and pitting edema.  (R. 24).  He found that
plaintiff has severe impairments including edema and asthma.  (R.
26).  To this extent, the ALJ gave substantial weight if not
controlling weight to Dr. Stevens's opinion regarding the nature
of plaintiff's impairments and symptoms and to Dr. Stevens's
diagnoses.  Beyond this basic information, plaintiff points to no
opinion provided by Dr. Stevens regarding the specific severity
of plaintiff's condition(s) or the limitations and restrictions
resulting from that condition(s).

However, plaintiff is correct that the ALJ erred in weighing
the opinion of Dr. Pulcher.  The ALJ correctly noted that Dr.
Pulcher examined plaintiff, that plaintiff reported to Dr.
Pulcher that she sees dead family members, that Dr. Pulcher
assessed plaintiff with a Global Assessment of Function (GAF) of
45, and that Dr. Pulcher diagnosed plaintiff with severe major
depressive disorder with congruent psychotic features.  (R. 25).
The ALJ later stated that he assigned great weight to the opinion

-14-

"of claimant's treating psychiatrist, Dr. Pulcher . . . because it indicates that her mental impairment was worse." Id.  As plaintiff points out, the decision reveals the ALJ made two factual errors in his finding (1) because Dr. Pulcher is a psychologist, not a psychiatrist; and (2) because Dr. Pulcher is a nontreating physician, not a treating physician.  (Pl. Br. 10).

As plaintiff claims, Dr. Pulcher is a psychologist who examined plaintiff one time at the request of the state agency and provided a consultative evaluation regarding plaintiff's mental condition.  (R. 227-31).  Therefore, he is a nontreating source, his opinion may never be given controlling weight, and his opinion is not worthy of the deference afforded a treating source opinion.  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003); Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  However, when the ALJ stated that he gave great weight to Dr. Pulcher's opinion as a treating source, he implied that he had weighed the opinion and accorded it deference as a treating source opinion.  This is error requiring remand.

The Commissioner does not argue that the ALJ recognized Dr. Pulcher as a nontreating source and that his statement the doctor was a "treating psychiatrist" was a harmless typographic error. But, even if the court were to consider that possibility it must reverse, because at best the court cannot discern what legal

standard the ALJ applied to evaluating and assigning weight to
Dr. Pulcher's opinion.

Because the record contains no <u>treating source</u> opinion
regarding plaintiff's functional limitations formulated in the
period before Dr. Block began treating plaintiff in Jan. 2004, it
will be necessary for the Commissioner on remand to weigh all of
the medical opinions relevant to that period by applying the
regulatory factors.  20 C.F.R. §§ 404.1527(d), 416.927(d)("Unless
we give a treating source's opinion controlling weight under
paragraph (d)(2) of this section, we consider all of the
following factors in deciding the weight we give to any medical
opinion.").  It will then be necessary to explain the weight
given those opinions, and apply the sequential evaluation process
in assessing plaintiff's disability.

**V.   Remaining Argument**

In one other argument, plaintiff claims the ALJ erred in
failing to apply SSR 83-20 to determine the onset date of
plaintiff's disability.  (Pl. Br. 8-9).  Application of the
medical evidence and the medical opinions is central to a
determination of onset date.  SSR 83-20, West's Soc. Sec.
Reporting Serv., Rulings 51 (1992)(onset date "can never be
inconsistent with the medical evidence of record").  The court
has determined that remand is necessary to properly weigh the
medical opinions of record.  Therefore, it would be premature to

-16-

attempt to determine whether the ALJ here properly determined the onset date of plaintiff's disability.  Plaintiff may make her arguments regarding onset date on remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  <u>Morales-Fernandez v. INS</u>, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 17th day of April 2009, at Wichita, Kansas.


s/Donald W. Bostwick
**DONALD W. BOSTWICK**
**United States Magistrate Judge**